Mr. Moore, I represent the appellant, Modern Woodman, with my co-counsel Mr. Lee. For the appellee, Michelle Lee, Director of the USPTO, our Thomas Casagrande, Associate Solicitor, and Mai Trang, both with the USPTO. A brief statement of the question before this court is whether the words fraternal financial have acquired distinctiveness as a service mark for financial services that are provided by my client, Modern Woodman, which is a fraternal benefits organization. The correct answer is yes, and the TTAB erred in ruling otherwise. The primary five years of exclusive use, substantially exclusive and continuous use of the mark. Substantially, the statute says exclusive, right? I believe the statute says substantially exclusive and continuous use. Substantially? I think that's designed to require, to indicate that Congress did not want a 100% standard. So, for example, if in the period of five years you stopped use of the mark for two weeks, that's still substantially continuous. Well, exclusive is what I was pointing to. Exclusive means nobody else is using. That's correct, Your Honor. I don't understand there to be any challenge in this record to the five years that you're claiming. Do you understand the other side to be made any challenge below? No, I think we're agreed on more than five years. It's just me wondering what does exclusive mean? Because exclusive to me means nobody else was using it for any purpose. Well, I think the word substantially exclusive means 100% is not required. That if they find two instances of use of these words by other parties. Substantially exclusive and continuous. But you have the five years and you believe that should entitle you to require distinctiveness. Yeah. Well, we think the substantially exclusive is very important, too, and the degree of exclusiveness. Because I think one of the things the case line indicates is the court should be concerned with whether we're taking words away from competitors. Do my clients need to use these words to be able to fairly compete? And I think the record shows no. And I think for those of us that have been practicing for a while, the situation with the Internet and web searches now gives us a much higher degree of confidence. And in the old days, I'll say when I started practicing in the 80s, you would have to go around and pull brochures from all these different insurance companies to find out what they're doing. But now all you've got to do is have the examining attorney sit at his or her computer and they get all the web pages. And most businesses now have a website, have a web page, because as you walk around town on the sidewalks, you have to watch out for people that are glued to their cell phones reading emails or links to web pages or things like that. Would you agree 1052-F is discretionary? It says may accept. Yes. I would agree it's discretionary. And then that's what leads to this sliding scale concept, which is the more descriptive you are, then the more you need to show whatever in the way of your views. Yes, sir. And I gather nobody can test that that's what the law really is. So this sliding scale is almost impossible to use in the real world. Yes, I think some of the case law would suggest an attempt at a bright line test. Yeah, but I'm not sure I'm talking about it. Well, I've got to now decide whether your trademark is highly descriptive or just descriptive or almost highly descriptive, because it makes a real difference. Because five years of substantially continuous and exclusive use may not be enough if you're really descriptive. But I don't see any metrics to tell me how I'm supposed to manage this other than to say, well, as the presiding judge pointed out, it's sort of discretionary in the hands of the decision maker. Yes, Your Honor. It puts you in a difficult position. Yes, Your Honor. It's somewhat vague. Help me out. How am I supposed to help you? Assume that I decide that this is not as highly descriptive as I guess the TTAB thought, then I would say, well, I should then tell them they should have given more weight and more evidence of five years of exclusive and continuous use, right? Was there any evidence of sales, marketing figures, examples of advertisements? No. The only specimen that we're considering of use is the web page that appears in the appendix. You've got two affidavits? Two affidavits. To the appellant's brief, appendix is pages 13 and 15, I think. You look at Louisiana Fish Fry, which says that affidavit of continuous use and sales figures weren't sufficient, and I don't think you rise to that level. How do you deal with that? Well, I think if Congress had wanted sales figures or if Congress had wanted consumer surveys, they've certainly had ample time to say so, and it provides a statement that if you can make the use statement, the length of use and the substantially exclusive, then that's a prima facie case or may be a prima facie case, and our position is that Congress did not require sales figures or geographic scope for the reason that that's valuable to competitors. I may not want to put on the public record what my sales figures are. Where are my customers? Well, but there are ways to make it confidential. We see that in the international trade cases all the time, that parties go in front of commerce and make their arguments on countervailing duty and anti-dumping cases and have sensitive price information that's masked. I would agree that if we had taken the district court appeal route out of the patent and trademark office, I'd have no trouble advising my client that your confidential information should be confidential, but the Trademark Trial and Appeal Board has, in my experience, two procedures for inter-parties cases. You get a letter that says our standard protective order applies unless the parties do something to remove it. With an ex-party case, they don't do that, and I think somebody with a FOIA request could take the position that there's no rule that says that the information stays confidential, and I mention the possibility of a district court case because that alternative is mentioned in the B&B hardware case. One of the reasons the Supreme Court made the decision in the B&B hardware case was they said, look, coming out of the Trademark Trial and Appeal Board, you can go directly to the Federal Circuit or you can go to the U.S. District Court for the Eastern District of Virginia. It's your choice. The second part of that is, for most of my clients, now a joke. But B&B was an inter-parties case. That's correct, Your Honor. How is it applicable here that TTAB's governing regulation is different? I think that you're correct that the TTAB regulations are different for ex-party cases versus inter-party cases, but I think the language of B&B hardware is, did the applicant for a trademark registration have a full and fair opportunity? The other considerations might be, were they represented by an attorney? Was it a fact or an issue that was clearly presented by the tribunal and addressed and important to the decision? And so that gives adversaries. So let's say later my client sues an infringer, which is not contemplated as far as I know at this point. If you stop at the board, don't go to the Federal Circuit, don't go to the Eastern District of Virginia, they're going to say, ah-ha, it's not distinctive. They litigated it because the board made a decision. They were represented by counsel. It was central to the decision. We don't want all this piecemeal litigation. We want repose, just like the Supreme Court encouraged us, and therefore that issue is settled. And I think we had one case where the standard for collateral estoppel was enunciated by the Eastern District of Virginia. I regret we don't have it in our briefs. I'd like to submit it to the court now verbally if I could. That's the Nation Star Mortgage case, which is at 155 F-sub-3, 8, pardon me, F-sub-3, 585. In particular, pages 592, 593, where the Eastern District of Virginia applied collateral estoppel. They listed five factors. First, the issue sought to be precluded must be identical to the one previously litigated. Two, the issue must have been actually determined in the prior proceeding. Three, the determination of the issue must have been a critical and necessary part of the decision in the prior proceeding. Four, the prior judgment must be final and valid. We can read. Why don't you deal instead with a case that the government raised, which was Norton v.  You have an opportunity to address it here. I'm forgetting exactly what they cited Norton v. Curtis. The ex-party, I'll quote from it, the ex-party prosecution examination of patent application must be considered as an adversary in proceeding and should not be limited to standards required in inter-parties proceedings. I think the standards are different for inter-parties cases before the Trademark Trial and Appeal Board versus ex-party cases. And my problem with that is what the Supreme Court said in B&B Hardware. They said collateral issue preclusion should apply because our goal is repose. Congress has let... But in B&B, the Supreme Court's discussion addressed the TTAB's trial role. That's correct. The case in B&B Hardware was an inter-parties case before the board. It was, I believe, an opposition where the unsuccessful party there was trying to re-argue the case. But here, they're acting in an appellate role, right? They're acting as an appellate role, but the examiner is really... The examining attorney is the adversary, and they're looking at evidence in the record just like an appellate court would. You've got three minutes left. You can keep going if you want. I think I would like to reserve it for rebuttal unless there are any immediate questions. If you were from Arizona, I'd say Mr. Casagrande. That's what it is.  May it please the court. Your Honors, I don't really have to get into the whole question of highly descriptive versus merely descriptive. The TTAB did not decide that issue. Its holding was based on basically the assumption that this is a run-of-the-mill, merely descriptive case, and that this evidence, even in a run-of-the-mill case, did not line up with this court's precedent, such as the Louisiana fish fry case Your Honor pointed out. You really don't need to go down that path. There was a question you asked appellant's counsel about the confidentiality of evidence submitted in connection with 2F proceedings as between going to this court on a closed record or going to the district court. The PTO doesn't take any different position in those two venues. The position is the same. That anything that an applicant wants to put in the record to support their claim for registration becomes part of the public record. What we usually do in the district court is negotiate a protective order that says you can show us all the new evidence that you want to put in and we'll agree to confidentiality until such time as you submit it to the court to prove your case, at which point all bets are off and it's a part of the public record. Just so the public knows what was used for our decision in that case, or the court's decision, to show that the mark did or did not have secondary meaning or required distinctiveness. There was also a question about collateral estoppel and B&B hardware. Section 2F disputes really are kind of the type of dispute that really doesn't lend itself usually to collateral estoppel because they're so changing over time. You're constantly supposedly using the mark over time. You're spending more money sometimes on advertising. Your sales will change. Maybe the way you use it will change. Those facts will kind of be the exception to the typical rule of collateral estoppel, so that's a case where you wouldn't really have to be very concerned about that. What I want to just point out is there was very little evidence here. Your Honors, the CAFC cases give a clear roadmap about what kinds of evidence are needed to show or can be used to show secondary meaning, including advertising expenditures, which were not in the record here, sales dollars, unsolicited media coverage showing that the media accepts your mark, consumer declarations or surveys. There's none of that. None of that is in the record here. Unless there are any further questions, I'll yield back the remainder of my time. I wanted to ask a question about the certificate of interest issue, which I know you believe isn't right because it wasn't raised below. Your adversary is suggesting that it would be a good idea if there were certificates of interest so your judges would know whether or not they needed to recuse themselves. And your argument, I believe, is, well, the owner of the mark has to be the applicant, and so the judges can look at the registration request and say, well, for example, let's assume it was the Coca-Cola company. They would say, well, the Coca-Cola company, we can look and see if we own any stock in Coca-Cola. That's great if the applicant isn't the wholly owned subsidiary of a holding company, for example. In my hypothetical, let's assume that Coca-Cola Company was owned by United Beverages, and that was the stock that was treated in the public. But Coke did own the mark. So Coke comes in and says, here's the mark. How did the three members of the board know that there isn't a true owner someplace else? And your answer was, well, you know, they're supposed to, this is in the 5 CFR, that you're supposed to recuse yourself if you have a financial interest. That only applies, that regulation on space, if you have knowledge. And so in my hypothetical, the judges would have no way of knowing. And so assume that the conflict of interest issue were right, had been raised, what's your response? Well, first of all, I'd say that that would clearly be a hypothetical, because in this record, Your Honor, My problem is that I know and you know that many people who come in and apply for registrations are wholly owned subsidiaries of holding companies or other entities. And we all believe that it's a good idea to have the judges be impartial and not have financial interest because it's against the law for them to have financial interest. So how do you protect your judges when you don't have a conflict, or you don't have a certificate of interest procedure at the PTO? That would be an interesting question to raise, and it's something we will be discussing with the board. I know you were here at the earlier argument when I asked the government contractor whether you all ever take anything back home from an oral argument here and say,  We do that a lot, actually. We find a lot of good in some questions. And I believe your argument is that you can always rely on the registrant to tell you who's the real party in interest. It just doesn't work in the real world. Well, we do require them to be the owner or the person who intends to use it, but sometimes you'll get information in the specimen that will raise a question with the examining attorney. For example, if you look at the specimen they have here. I understand how there may be something in the record that would cause an attendee, even a highly skilled and honorable examiner, to ask a few more questions, but I'm just saying by the time it gets to the judges, who are the ultimate decision makers, we rely very, very heavily on certificates of interest in this court to make certain that we can avoid, whenever possible, sitting on a case in which we have a financial interest. Right. And really, just one response to that is, as I said, this is something we are going to take back and discuss in this case and see whether or not that's something that we might do. The second thing is, and the reason why I said it's purely hypothetical, is in the certificate of interest that you required, they said there are no people lurking behind the scenes who hold any of those interests in the associate. Anything further, counsel? No, they are, and we were just asked that the court refer them to the board's finding. Plug into that United Beverage Company, Clarkson. On the court's raising of the certificate of interest, I'd like to submit that the current political climate includes suggestions that for every regulation promulgated, two have to be removed. And so the PTO might find valuable, if the court deems proper, a remand of this case and a suggestion that they should implement this rule, which would then perhaps give them cover to- Where's that regulation? Pardon? Where's that regulation to which you're citing? The- Two for one? That was a presidential proclamation, you're right. I believe, or a tweet perhaps, but anyhow. And I think you would, being pragmatistic, people would recognize the chances of the applicant in this case coming back to this court after a remand with a decision with appropriate comments would be unlikely to burden this court again, and it might provide the U.S. patent and trademark off with an incentive after decades of having a certificate of interest required by this court. Wait a minute. There was no conflict of interest? There was no conflict of interest in this case. The owner has always been, and the real party in interest has always been, Modern Woodman of America. But I think the appearance of propriety and giving the judges a chance is important, and that would be a good rule for the TTAB to implement on expiry cases. We may even have an idea box over there where employees put a good idea in the box, they get some benefit out of it. That might be right. The possibility of improving the government has come up twice in this hearing today, and so we've all done good work. Thank you, Your Honor. If there are no further questions, then appellant rest. The matter will stand submitted. Thank you, counsel. All rise.